**William T. SPRIGGS, Appellant,**

v.

**SOUTH STRABANE TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.

Decided Nov. 8, 2001.

Sanford S. Finder, Washington, for appellant.

Frank A. Conte, Washington, for appellee.

Before PELLEGRINI, J., LEADBETTER, J. (P.), JIULIANTE, Senior Judge.

LEADBETTER, Judge.

William T. Spriggs (appellant) appeals from the order of the Washington County Court of Common Pleas affirming the order of the South Strabane Township Zoning Hearing Board (Board) requiring appellant to remove a sign that violated the Township Zoning Ordinance (Ordinance). We affirm.

Appellant resides on a lot located in South Strabane Township's residential district, zoned R–3.[1] Appellant also owns sev-

---

1. Article II, Section 2.1 of the Ordinance establishes the following types of districts within the Township: Agricultural (A–1), Residential (R–1–R–4), Commercial (C–1, C–2), Industrial (I–1, I–2) and Flood Plain (FP). Article VII of the Ordinance defines an R–3 district as a "medium-low density residential district," established to provide sites for resi-

eral cleared vacant lots located in the rear of his residence, overlooking Interstate 70. Appellant erected a privacy fence between an in-ground swimming pool, located immediately behind his residence, and the edge of his property adjoining Interstate 70. The privacy fence is 64 feet in length and ranges from ten to eleven feet in height. The entire upper four-foot section of the fence is solid plywood. To this plywood section, appellant affixed white, aluminum, two-foot high lettering, communicating passages from the Bible. Appellant changes these passages from time to time. Some of the messages are written in Hebrew and some are English translations of biblical psalms. This section of the fence faces Interstate 70, but does not face any other property.

In August of 1998, the Township's Assistant Code Enforcement Officer notified appellant that the plywood section of his fence constituted a sign that violated the Ordinance. The Township Zoning Officer issued a citation ordering appellant to remove the sign. The matter was then referred to the Board.

The Board subsequently held a public meeting at which appellant testified that he erected this sign for the purpose of expressing his personal religious beliefs in

public. He testified that he received no complaints about the sign, other than from the Township Zoning Officer. He asserted that he had a right to express his religious beliefs through the placement of these messages on his sign. The Board concluded that the plywood section of appellant's fence containing Bible verses constituted a "sign" as that term is defined in Article IV of the Ordinance.[2] However, the Board concluded that the sign was not permitted under any provisions of the Ordinance.

The Board analyzed the pertinent provisions of the Ordinance in rendering its order. Article XV of the Ordinance sets forth the regulations for signs within the Township. Pursuant to Section 15.1–3, a permit must be obtained for the erection or alteration of any sign, unless otherwise indicated in the Sign Requirement Table, Section 15.3–3 of the Ordinance (Table).[3] The Table delineates certain signs as "exempt signs," which are not subject to the provisions of the Ordinance. The Board noted that appellant's sign did not fall within any of the categories of "exempt" signs which include: signs of a duly constituted governmental body, memorial signs or tablets, or temporary signs or banners announcing sales in C–2 Commercial Districts.[4]

dential forms in urban areas of the community.

2. Article IV of the Ordinance defines a sign as: "Any cloth, card, paper, metal, painted, glass, wooden, plastic, plaster, stone sign or other sign, device or structure of any character whatsoever including statuary placed for outdoor advertising, information, or directional purposes on the ground or on any tree, wall, bush, rock, post, pole, fence, building, trailer, vehicle or structure. The term "placed" shall include erecting, construction, posting, painting, printing, tacking, nailing, gluing, sticking, carving, or otherwise fastening, affixing or making visible in any manner whatsoever."

3. Section 15.3 of the Ordinance describes the Township's procedures for obtaining a sign permit. Section 15.3–1 requires that the Township Zoning Officer not issue a permit to erect, alter, or enlarge any sign which exceeds four square feet until the design is approved by the Planning Commission, as required in the Sign Requirement Table, section 15.3–3. Section 15.3–2 mandates that a permit from the Township Zoning Officer shall be required before a sign may be erected, altered or enlarged, as required in the Sign Requirement Table, section 15.3–3.

4. Moreover, Section 15.2–10–d mandates that even these "exempt" signs may not exceed sixteen square feet in area. Appellant's sign is 256 square feet and therefore, clearly exceeds that limit.

The Ordinance also provides a number of other categories of signs, including: "Directional or Warning," "Farm Business," "Information or Public Service," "Nameplates," and "Bulletin Boards and Signs," which are permitted in various districts. Again, however, the Board found that appellant's sign did not fall within any of these classifications. Moreover, there are size restrictions upon each of these types of signs, depending upon the district in which these signs are located, and appellant's sign far exceeds the maximum dimensions for any of these signs.

Finally, the Board noted that even if appellant's sign could be construed as a billboard,[5] while the square footage would be in compliance with the Ordinance,[6] Section 15.1–10 requires that such a billboard only be located in an I–2 Industrial District. Because appellant's property is located in an R–3 residential district, the Board concluded that the sign was clearly prohibited and must be removed.

Appellant appealed the Board's decision to common pleas, conceding that the sign violates the Ordinance's size requirements.[7] However, appellant argued that the sign carries a non-denominational religious message and is thus a protected activity under the First Amendment of the United States Constitution and under Article I, Section VII of the Pennsylvania Constitution. Common pleas held that the zoning regulations did not violate appel-

lant's constitutional right to free speech and affirmed the Board's decision.

Appellant now asserts to this court that common pleas and the Board erred in concluding that the Ordinance's restrictions did not violate his constitutional right to free speech. Our analysis of appellant's free speech claim is guided by the test developed by our United States Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The *O'Brien* court held:

> A government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial government interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377, 88 S.Ct. 1673. The *O'Brien* test provided the framework for the standard time, place and manner test that the Supreme Court has since applied to content-neutral classifications of speech. *See Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 298, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (noting that the *O'Brien* test for validating a regulation of expressive conduct "is little, if any, different from the standard applied to time, place and manner restrictions"). These time, place or manner restrictions on

---

**5.** Article IV defines a billboard as: "A sign other than one indicating a business conducted on the premises, a sign upon which advertising matter of any character is printed, posted or lettered. It may be free-standing or attached to a surface of a building or other structure. For the purposes of this Ordinance it shall be considered a structure."

**6.** Section 15.1–10 permits billboards in I–2 Districts provided that the total area of the billboard does not exceed three hundred square feet.

**7.** Because Appellant has not attempted to erect a sign falling within the Ordinance's size requirements, we do not reach the issue of whether Appellant's freedom of speech would be impermissibly restricted if a sign which complied with the size and other physical restrictions were rejected as a result of the Ordinance's sign classifications. *But see City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

speech are valid if "justified without reference to the content of the regulated speech," "narrowly tailored to serve a significant governmental interest," and "leave open ample alternative channels for communication of the information." *Id. citing City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

In the instant case, the Township clearly has a significant interest in regulating the size of signs within residential districts, and prohibiting billboards within those districts. The Court has previously held that billboards can "distract drivers," constitute "traffic hazards" and can be "perceived as an esthetic harm" to the area. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509–10, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). As the Court held: "If [a] city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems that they create is to prohibit them." *Id.* at 508, 101 S.Ct. 2882.

Additionally, the Ordinance restricts appellant's sign without reference to the content of his message. Appellant's sign is simply not within the size limitations for signs in his district. It is appellant's failure to meet the requirements of the Ordinance, and not the content of appellant's message, that prompted the Board to require removal of appellant's sign. Finally, the Ordinance leaves open alternative means for appellant to communicate his religious beliefs, such as conforming his sign to the size requirements of the Ordinance for his district, or, as the Board noted, attempting to declare his religious beliefs on a sign of this size in an I–2 district. Accordingly, we affirm the order of common pleas.

## ORDER

AND NOW, this 8th day of November, 2001, the order of the Washington County Court of Common Pleas in the above captioned matter is hereby AFFIRMED.