# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamar Advertising of Penn, LLC   :
                                :
           v.               :
                                :
Southmont Borough Zoning Hearing  :   No. 91 C.D. 2017
Board and Borough of Southmont    :   Submitted: November 14, 2017
                                :
Appeal of: Borough of Southmont    :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI               FILED: December 12, 2017


The Borough of Southmont (Southmont) appeals from an order of the Court of Common Pleas of Cambria County (trial court) reversing the Southmont Borough Zoning Hearing Board's (Board) decision finding that the Southmont zoning ordinance's advertising sign provisions resulted in a *de jure* exclusion of billboards and granting Lamar Advertising of Penn, LLC (Lamar) permission to construct two off-premise signs subject to certain specifications, including height and area. For the following reasons, we affirm.

**I.**

Dino and Rosemary Persio (together, Persios) own 3.9 acres of land located at 942 Pine Grove Lane in Southmont, Cambria County (Property), including a structure most recently used as a restaurant. The Property is located in Southmont's only Commercial (C) District, with a cemetery to the north and a synagogue and local schools across the highway. Lamar owns and operates a company specializing in off-premise outdoor advertising otherwise known as billboards. On July 11, 2012, the Persios entered into a lease allowing Lamar to place billboards on the Property. Lamar then submitted an application to Southmont for a permit to erect an off-premise, double-sided billboard with one face bearing a digital LED display and the other a static display. Both proposed signs were to be 45.2 feet high[1] with the following specifications: front digital sign – 11.75 feet x 21.6 feet = 253.8 square feet; and back static sign – 10.75 feet x 23 feet = 247.25 square feet.

Section 901 of the Southmont Borough Zoning Ordinance No. 359 (Zoning Ordinance) pertaining to signs provides, in pertinent part:

SECTION 901 GENERAL PROVISIONS

Except for signs indicating availability of a building or land for rent or sale, any sign erected or altered after the effective date of this Ordinance shall be in accordance with the provisions and regulations contained in this Article.

A. A permit shall be required for any sign erected.

---

[1] The proposed location of the post bearing the billboards is on a steep slope approximately 20 feet below the surface of the public roadway known as Menoher Boulevard.

B. All signs shall be constructed and maintained in a safe orderly manner. No sign shall be placed in such a position that it will cause danger to vehicular or pedestrian traffic by obscuring view or causing distraction.

C. Any sign, if illuminated, shall be non-flashing, shall be of enclosed lamp design, and shall be lighted in a manner not detrimental to any adjacent property or public right-of-way.

\* \* \*

F. **The height of any sign may not exceed twenty (20) feet, as measured from the ground level to the top of the sign.**

(Reproduced Record (R.R.) at 11a.) (Emphasis added.) Section 903 of the Zoning Ordinance provides, in pertinent part:

SECTION 903 PROVISIONS FOR "C" DISTRICT

A. In the "C" District, the following signs shall be permitted and the following regulations shall apply:

1. Any sign permitted in an R District.

2. On premise business signs or identification signs not to exceed thirty (30) square feet per sign, however, if there are more than two (2) businesses the total amount of signage shall not exceed sixty (60) square feet.

\* \* \*

5. **No off-premise signs allowed**.

(R.R. at 12a.) (Emphasis added.)

3

Southmont denied Lamar's permit request stating that the proposed signs exceed the 20-foot maximum height limitation set forth in Section 901-F of the Zoning Ordinance, as well as Section 903-A5 of the Zoning Ordinance which prohibits off-premise signs.[2]  Lamar then filed an appeal and application for a variance with the Board arguing, among other things, that the Zoning Ordinance is *de jure* exclusionary because it contains a blanket exclusion of billboards as a use without justification.  Lamar also argued that the Zoning Ordinance is *de facto* exclusionary because compliance with its restrictions renders billboards economically impracticable or impossible as a use.  The parties submitted a joint stipulation of facts on July 7, 2014, including diagrams of the Property and the proposed sign location.

At the outset of a hearing before the Board, Lamar requested that the Board determine whether the Zoning Ordinance's ban of off-premise signs was *de jure* exclusionary because it excludes off-premise signs in all districts.  The Board declined to rule immediately and took the issue under advisement.

Nathan Karn, Esquire (Attorney Karn), testified on behalf of Lamar as an expert in municipal government issues concerning zoning ordinances.  Citing *Township of Exeter v. Zoning Hearing Board of Exeter Township (Exeter)*, 962 A.2d 653 (Pa. 2009), he testified that billboards are considered a legitimate use of property in Pennsylvania and, therefore, cannot be totally excluded by a municipality.  Attorney Karn testified as to the meaning of *de jure* and *de facto* exclusions in zoning

---

[2] Southmont's denial letter also specified that the permit request did not comply with the Ladybird-Johnson Act, 23 U.S.C. §§ 101-610, or the Outdoor Advertising Control Act of 1971, Act of December 15, 1971, P.L. 596, 36 P.S. §§ 2718.101 – 2718.115.  These reasons for the denial have been abandoned.

ordinances and opined that, based upon his review of the entire Zoning Ordinance, it was *de jure* exclusionary[3] because there is no district in Southmont in which off-premise advertising is permitted.[4]

George A. Foster (Foster), Lamar's Vice President and General Manager, testified regarding the topography of the Property as well as construction and specifications of Lamar's proposed static and LED billboards. Foster testified that the industry standard for a regular billboard is 300 square feet, and the standard for larger billboards that are made to go across highways is 600 square feet. He stated that the proposed size of the two billboards is necessary given the speed limit (45 m.p.h.) and size of the highway the Property abuts and the distance vehicles would be from the billboards. Foster testified that if the signs were any smaller, they would be ineffective at communicating an off-premise advertising message, and none of his advertisers would pay for an off-premise sign that was only 30 square feet. He explained that Lamar proposed to put the billboards at the bottom of the slope easement along the roadway the Property sits upon because they cannot erect the billboards within the slope easement. The signs are proposed to be 42.5 feet high, as measured from the bottom of the slope, because they need to be clearly visible to vehicles traveling on the roadway. Foster testified that this would place the

---

[3] A *de jure* exclusion exists where an ordinance, on its face, totally bans a legitimate use. A *de facto* exclusion exists where an ordinance permits a use on its face, but when applied, acts to prohibit the use throughout the municipality. *Macioce v. Zoning Hearing Board of the Borough of Baldwin*, 850 A.2d 882, 887 (Pa. Cmwlth. 2004).

[4] Counsel for Southmont objected to Attorney Karn's testimony on the basis that it was an attempt to usurp the role of the Board in deciding the constitutionality of the Zoning Ordinance.

billboards six feet above the road surface, still within the Zoning Ordinance's 20-foot height restriction if you measure from the actual road surface.

Richard Wargo, Southmont's Manager and Zoning Officer (Zoning Officer Wargo), testified that billboards are not allowed anywhere in Southmont. He also testified that to the best of his knowledge, all of the on-premise signs in the C District comply with the size and height requirements of the Zoning Ordinance. He testified that there are two schools and a synagogue near the proposed billboard site, with heavy traffic in that area, and there is a concern that the billboard could be a distraction to drivers.

Michael Lose, the West Millcreek Police Chief (Chief Lose), testified that he conducted a traffic study by placing a mobile radar trailer traffic counter (counter) in close proximity to the location of the proposed billboards. The counter clocked the northbound, downhill traffic for six days and observed 11,121 vehicles traveling at an average of 44 m.p.h.[5]

The Board denied Lamar's appeal and variance request, finding that the Zoning Ordinance was not *de jure* exclusionary because it permitted on-premise signs. In the alternative, the Board held that Lamar's request was properly denied because it failed to conform with area and height requirements for all signs in the borough, because 300 square foot signs did not represent the minimum variance

---

[5] Several members of the public present at the hearing asked questions and testified that they opposed the permit request due to the proposed billboards' proximity to local schools, a synagogue and cemetery and the high volume of traffic; the potential of the billboards to distract drivers; and because a 300-foot sign would detract from the aesthetics of the area.

necessary to convey an advertising message, and any hardship was unique only to a small portion of the Property and created by Lamar due to where it proposed to place the signs.

Lamar appealed to the trial court[6] and Southmont intervened. The trial court sustained Lamar's appeal, finding that Section 903-A5 of the Zoning Ordinance is unconstitutional to the extent that it excludes billboards and that Southmont failed to establish a substantial relationship between the exclusion and public health, safety, morality or general welfare. Citing to *In re Bartkowski Investment Group, Inc.*, 106 A.3d 230 (Pa. Cmwlth. 2014), and Section 1006-A(c) of the Municipalities Planning Code (MPC),[7] the trial court noted that it "has broad discretionary powers to fashion appropriate relief to the successful challenger of a zoning ordinance." *Bartkowski*, 106 A.3d at 248.

The trial court also determined that additional evidence would be beneficial in fashioning relief because the issues of public health, safety, morality and general welfare were not fully developed and the Board did not receive complete evidence regarding alternatives to the proposed billboards. Therefore, the trial court remanded the case to the Board

> for further proceedings relative to all issues not inconsistent
> with this Opinion/Order. Including, but not limited to,
> exploration of alternative sites and/or alternative

---

[6] The parties submitted an updated Stipulation of Facts to the trial court on May 29, 2015.

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11006-A(c).

7

> configurations for [Lamar]'s proposed use. In an effort to encourage finality and discourage delay, any issues not presented before the Board will be waived, and will not be considered in additional proceedings before this Court.

(Trial Court's November 24, 2015 Order at 2.)

## II.

On remand, Zoning Officer Wargo testified that the topography of the Property had not changed since the Perios purchased it in 2011. Southmont also presented a written report from Brad Detweiler (Detweiler), a registered professional land surveyor, showing the use of significantly smaller, on-premise advertising signs throughout Cambria County.[8]

Several members of the community testified regarding concerns they have over the proposed billboards, in particular, the proposed size, arguing: they are unsightly and too close to residences; would detract from the area's historic nature and beauty; would have a negative effect on neighboring property values; would distract drivers and create a safety hazard; could be seen from the cemetery; and smaller signs are sufficient to carry an advertising message.

Andrew Ebersole (Ebersole), a licensed land surveyor, testified that the grading of the roadway along the Property changed at some point so that, with respect

---

[8] Southmont argued that the Board should adopt the Zoning Ordinance's size and height requirements for on-premise signs when considering Lamar's request to construct the proposed off-premise billboards. Lamar argued that the Zoning Ordinance's on-premise sign requirements were irrelevant and also objected to the introduction of evidence in Detweiler's report regarding signs located outside Southmont.

to the location of the proposed billboards, the center line of the roadway is now six feet higher. Ebersole admitted that this change occurred prior to the Perios purchasing the Property.

The Board then made the following recommendations to the trial court: (1) Lamar should be permitted to erect two billboards on the Property on one support, approximately 60 square feet each (no more than 5.3 feet tall by 11.5 feet wide); (2) the bottom of each billboard should be no more than 3 feet above the center of the roadway; (3) the downhill facing billboard should be static without animation and backlighting; and (4) the uphill facing billboard could be digital but with no animation, no video, a 30-second hold on changing messages, and must automatically dim at night to no more than 10% of daytime illumination.

Lamar appealed, and the trial court sustained the appeal but did not grant all of the relief Lamar requested. It limited the downhill facing sign to 64 square feet rather than 275 square feet, without animation and backlighting; and limited the uphill facing sign to a 300 square foot digital billboard with no animation, no video, an 8-second hold on changing messages, and it must automatically dim at night to no more than 10% of daytime illumination. The trial court admonished Southmont for failing to address the issue of public health, safety, morality and welfare on remand. Southmont then filed this appeal.

**III.**

On appeal, Southmont does not argue that the trial court erred in determining that Section 903-A5 of the Zoning Ordinance is exclusionary by totally excluding billboards. Instead, it argues that the trial court abused its discretion by

9

granting Lamar greater relief than was reasonable because that relief was inconsistent with the square footage restrictions for on-premise business signs as outlined in Section 903-A2 of the Zoning Ordinance as well as allowing the sign to be in excess of the 20-foot height limitation contained in Section 901-F.

## A.

Initially, Southmont contends that because the parties entered into two separate stipulations of fact and the trial court did not take any additional evidence, the trial court was required to affirm the Board's determination regarding relief unless the Board committed a manifest abuse of discretion or an error of law. However, Section 1006-A(c) of the MPC[9] gives the trial court and not the zoning hearing board jurisdiction to oversee this process and make independent findings. As we stated in *Bartkowski*:

> Section 1006-A gives broad discretionary powers to the trial court to fashion appropriate relief to the successful challenger of a zoning ordinance. In exercising this power to fashion judicial relief, the trial court owes no deference

[9] 53 P.S. § 11006-A (c) provides:

> If the court finds that an ordinance or map, or a decision or order thereunder, which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

to the administrative findings of the zoning hearing board . . . . This does not mean, however, that a trial court must also ignore findings of the local agency or the evidence gathered in the local agency proceeding. Though not binding, both may inform a trial court's decision under Section 1006-A. The trial court may also conduct a hearing to receive evidence. Such additional evidence, whether developed before the trial court or the zoning hearing board at the trial court's discretion, would seem necessary should the trial court consider alternative sites and/or alternative configurations for the use at issue. . . . Ultimately, what form of judicial relief is appropriate – *e.g.*, location and/or configuration – is the trial court's decision, subject to a right of appeal, of course, to this Court.

106 A.3d at 248. In effect, this provision embodies the principle that "Where a zoning ordinance acts as a *de jure* exclusion of a legitimate use . . . 'the sole remedy is to allow the use somewhere in the municipality and equity dictates that this opportunity fall to the successful litigant.'" *Lamar Advertising of Penn, LLC v. Zoning Hearing Board of the Borough of Deer Lake (Deer Lake)*, 915 A.2d 705, 710 (Pa. Cmwlth. 2007) (quoting *Adams Outdoor Advertising v. Borough of Coopersburg Zoning Hearing Board*, 625 A.2d 768, 770 (Pa. Cmwlth. 1993)); *see also Casey v. Zoning Hearing Board of Warwick Township*, 328 A.2d 464, 469 (Pa. 1974) (stating "[t]o forsake a challenger's reasonable development plans after all the time, effort and capital invested in such a challenge is grossly inequitable.").

Because the trial court is granted jurisdiction to decide the appropriate remedy and not the Board, what is before this Court is whether the trial court, not the Board, abused its discretion in determining, based on the evidence presented, that what Lamar proposed "is reasonable, and not injurious to the public health, safety, welfare and morals." *Deer Lake*, 915 A.2d at 711 (citation omitted); *see also Adams*

*Outdoor Advertising, Ltd. v. Hanover Township Zoning Hearing Board*, 633 A.2d 240, 245 (Pa. Cmwlth. 1993).

**B.**

As to its contention that the trial court abused its discretion by permitting Lamar to construct a billboard in excess of the square footage limitation for on-premise signs, Southmont would have to show that what was proposed by Lamar as site specific relief would be detrimental to the health, safety and welfare of the community. In addition, to obtain the relief that it suggests, Southmont would have to establish that the square footage of the signs it proposes is reasonable and would advance the public's health, safety and welfare.

In determining what sized signs are needed to grant site-specific relief, proof of industry standards for billboards are probative; however, a municipality can establish that smaller signs would be reasonable if it can demonstrate that the smaller size it proposes would be effective at communicating a commercial message. *Exeter*, 962 A.2d at 662-63; *Interstate Outdoor Advertising, L.P. v. Zoning Hearing Board of Warrington Township*, 39 A.3d 1019, 1026 (Pa. Cmwlth. 2012), *petition for allowance of appeal denied*, 75 A.3d 1283 (Pa. 2013). Based on that evidence, the trial court can make an independent judgment of the size of the sign that provides site-specific relief.

In this case, Lamar offered evidence that the industry standard for a regular billboard is 300 square feet, and the standard for larger billboards that are made to go across highways is 600 square feet. All that Southmont offered was evidence showing the use of significantly smaller, on-premise advertising signs

12

throughout Cambria County without any evidence that the size of the billboards it proposed could convey a commercial message. It did not offer any substantive evidence that the signs would "distract drivers" or constitute "traffic hazards,"and did not provide any evidence regarding the effects the two billboards would have on development or how they could harm the area. *See Norate Corp. v. Zoning Board of Adjustment of Upper Moreland Township*, 207 A.2d 890 (Pa. 1965); *Spriggs v. South Strabane Township Zoning Hearing Board*, 786 A.2d 333 (Pa. Cmwlth. 2001).

Given that Southmont did not offer any evidence to show the small, on-premise square footage limitation was reasonable to convey a commercial message or otherwise show that the proposed billboards would adversely affect the health, safety and welfare of the community, the trial court did not abuse its discretion in finding that the billboards had to be in excess of the Zoning Ordinance's square footage requirement for on-premise signs to give site specific relief.

**C.**

As to the trial court's ordering that the billboards could be 45.2 feet in height rather than the 20-foot height requirement for all signs contained in the Zoning Ordinance, it is undisputed that it would be impossible for Lamar to comply with the 20-foot height restriction if it was forced to measure from the base of the slope versus the highway road surface because the billboards would not be visible to passing motorists. Again, Southmont failed to offer any evidence that allowing a sign to be in excess of the 20-foot height requirement would "distract drivers" or constitute a "traffic hazard;" failed to show what effects the billboards would have on development; and failed to show any other effect that would be detrimental to the health, safety and welfare of the community.

13

Accordingly, given that Southmont failed to offer any probative evidence establishing that the proposed billboards were in any way detrimental to the health, safety and welfare of the community, the trial court did not abuse its discretion in granting the site-specific relief that it ordered, and that order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

Judge Wojcik did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamar Advertising of Penn, LLC          :
                                        :
            v.                          :
                                        :
Southmont Borough Zoning Hearing        :
Board and Borough of Southmont          :   No 91 C.D. 2017
                                        :
Appeal of:  Borough of Southmont        :

## **O R D E R**

AND NOW, this 12th day of December, 2017, the order of the Court of Common Pleas of Cambria County in the above-captioned matter is affirmed.

---
DAN PELLEGRINI, Senior Judge